IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES,<br><br>v.<br><br>JOSHUA LEE CHRISTOPHER,<br><br>Defendant. | Case No. 2:13-cr-117 |

### MEMORANDUM OPINION & ORDER

Before the Court is the defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)." ECF No. 91. The motion argues that a reduction in sentence is warranted because the defendant's medical conditions place him "at increased risk for developing serious illness from COVID-19," and because "an incorrect career-offender designation . . . increased his guidelines at the original sentencing and later made him ineligible for relief under a retroactive Guidelines amendment." *Id.* at 1–2.

This matter is now ripe for disposition. The Court has fully considered the arguments set forth in the parties' briefs and has determined it is not necessary to hold a hearing on the motion. For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    PROCEDURAL HISTORY**

The defendant, Joshua Lee Christopher, was charged on August 23, 2013, with one count of distribution and possession with the intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). ECF

No. 3. The defendant pleaded guilty on March 19, 2014, ECF No. 30, and was sentenced on July 7, 2014, by the Honorable Henry Coke Morgan, to 240 months of incarceration and eight years of supervised release, ECF No. 40.

The defendant filed the instant motion for compassionate release on February 5, 2021. ECF No. 91. The United States filed a response in opposition on March 18, 2021. ECF No. 99. The defendant filed a reply on March 29, 2021. ECF No. 103. The defendant filed a supplemental memorandum on December 8, 2022. ECF No. 106. This case was reassigned to this Court on March 17, 2023.

## II. LEGAL STANDARDS

### A. Exhaustion

Before the court may consider a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must exhaust their administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). Alternatively, once 30 days have passed after the defendant has requested relief from the warden of their facility, the defendant may file a motion with the court as though they had exhausted their administrative remedies. *Id.*; *see also United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (clarifying that a defendant may satisfy the exhaustion requirement by waiting 30 days from the date of their initial request to file a motion in the district court, even if the warden has already responded to their request).

### B.     Merits

A court may modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) if, after considering the sentencing factors in 18 U.S.C § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction." *See United States v. Hargrove*, 30 F.4th 189, 197–98 (4th Cir. 2022). The overarching purpose of the compassionate release mechanism guides district courts' consideration:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

*Id.* at 197. Courts in this district have generally considered the defendant's arguments regarding extraordinary and compelling reasons for sentence reduction first, then balanced the outcome of that analysis against the sentencing factors in § 3553. *E.g.*, *United States v. Ogun*, No. 4:12cr4, 2023 WL 2207114, at *1 (E.D. Va. Feb. 24, 2023).

#### i.     *Extraordinary and compelling reasons*

The Court may reduce a prisoner's sentence under § 3582(c)(1)(A)(i) if it finds "extraordinary and compelling reasons" to do so. The prisoner bears the burden of demonstrating such reasons. *See Hargrove*, 30 F.4th at 195.

### a.     COVID-19 Claims

The Sentencing Commission has promulgated a policy statement, United States Sentencing Guideline § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). This policy statement was last updated before the First Step Act was signed into law, *i.e.*, when only the Bureau of Prisons could bring compassionate release motions. *Id.* As a result, the Fourth Circuit has held that the policy statement is not binding but can serve as "helpful guidance" when evaluating compassionate release motions filed by prisoners. *Hargrove*, 30 F.4th at 197 (quoting *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021)). The policy statement provides that extraordinary and compelling reasons exist, in the medical/health context, where:

> The defendant is suffering from a terminal illness . . . serious physical or medical condition . . . serious functional or cognitive impairment . . . [or] deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1 at (A)(i) and (ii), or where

> The defendant (I) is at least 65 years old; (II) is experiencing a serious deterioration in physical or mental health because of the aging process; and (III) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

*Id.* at (B). A "district court's analysis must examine whether the defendant's request for reduction is consistent with the Sentencing Commission's applicable policy statements." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

4

Although the Fourth Circuit has not, in a published opinion, definitively set forth the standard for courts to use when evaluating compassionate release motions based on COVID-19, the court has stated that the "inmate must show at least 'that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19.'" *United States v. Steward*, No. 22-6403, 2022 WL 16948600, at *1 (4th Cir. Nov. 15, 2022) (unpublished) (quoting *High*, 997 F.3d at 185).

The prevailing standard applied by courts in this district and elsewhere in the Fourth Circuit is that the prisoner must show "both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (emphasis added); *see also, e.g.*, *Hargrove*, 30 F.4th at 196 (affirming a district court order denying relief after applying this standard); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished) (same).

### b.  *Sentencing Claims*

The Fourth Circuit held in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), that a district court considering a motion for compassionate release brought under § 3582(c)(1)(A) can properly consider "the length of the defendants' sentences, and the dramatic degree to which they exceed what Congress now deems appropriate, in finding 'extraordinary and compelling reasons' for potential sentence reductions." *Id.* at 288.

In *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), the Fourth Circuit held that the definition of "conspiracy" in 21 U.S.C. § 846 is broader than the definition of conspiracy under § 4B1.2 of the United States Sentencing Guidelines because § 4B1.2 requires an "overt act," and § 846 does not. *Id.* at 237–39. As a result, a conspiracy conviction under § 846 cannot constitute a "conspiracy" under § 4B1.2 and thus cannot be used to enhance a defendant's base offense level pursuant to that section. *Id.*

### ii. Sentencing Factors

After completing the "extraordinary and compelling reasons" analysis, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Nurani*, No. 2:11cr34-3, 2023 WL 2058649, at *7 (E.D. Va. Feb. 16, 2023). Even if the Court finds "extraordinary and compelling reasons" to reduce a defendant's sentence, the Court may ultimately deny a motion for compassionate release if its analysis of the § 3553(a) factors counsels against release. *Id.* Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

6

(4) the kinds of sentence and the sentencing range established [by the Sentencing Commission];

(5) any pertinent policy statement [issued by the Sentencing Commission] [that is in effect on the date the defendant is sentenced except as provided in section 3742(g)];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## II. ANALYSIS

### A. Exhaustion

The defendant argues that he has met the exhaustion requirement because he submitted a request for reduction in sentence with the warden of his facility on January 6, 2021. ECF No. 91-1 at 2. The warden denied his request on January 8, 2021. *Id.* at 1. Because he filed the instant motion 30 days after he submitted his request, the defendant argues that he has satisfied the requirement. ECF No. 91 at 13–14. The government argues that the defendant has not met the 30-day waiting requirement because "his administrative request did not present the grounds for release (*i.e.*[,] the defendant's medical conditions) raised in this motion." ECF No. 99 at 12.

The Fourth Circuit has explained that, given the alternative 30-day waiting period in the statute, a "defendant is not required to exhaust [their] administrative remedies with the BOP at all beyond making the initial request for compassionate release." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022). The court saw

"no reason to limit [a defendant's] motion for compassionate release in the district court to only those grounds for compassionate release . . . identified in [their] request to the BOP." *Id.* As a result, the government's issue exhaustion argument does not hold water, and the Court finds that the defendant has met the exhaustion requirement.

## B.  Merits

### i.  *Extraordinary and compelling reasons*

#### a.  COVID-19

To establish extraordinary and compelling reasons that justify release due to the COVID-19 pandemic, the defendant must show "both a particularized susceptibility to [COVID-19] *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841 (emphasis added). The defendant argues that he has obesity, asthma, and hypertension, which put him "at increased risk for developing severe illness from COVID-19." ECF No. 91 at 1. The government agrees that "the defendant's obesity presents an 'extraordinary and compelling' reason for compassionate release," ECF No. 99 at 20, but argues that the defendant "has not established that his asthma is" sufficiently severe to warrant relief and that his hypertension is sufficiently controlled, *id.* at 19–20. The government also argues that the defendant has not demonstrated a particularized risk of contracting COVID-19 at his facility. *Id.* at 20–23.

The CDC advises that obesity "can make you more likely to get very sick from COVID-19," and that "[t]he risk of severe illness from COVID-19 increases sharply

8

with higher BMI."[1] On the most recent day for which data is available in the record, the defendant's BMI was 37.4, which meets the CDC's definition of obesity.[2] ECF No. 100 (SEALED) at 46. The CDC defines "severe obesity" as having a BMI of 40 or higher.[3] Therefore, based on his BMI, the defendant is obese and is close to qualifying as severely obese.

The CDC also advises that chronic lung diseases, including "[a]sthma, if it's moderate to severe," can make a person more likely to get very sick from COVID-19.[4] The severity of the defendant's asthma is not clear from the record. But the defendant has been prescribed two medications for asthma, one taken daily and one as needed. ECF No. 100 (SEALED) at 23–24. Thus, he appears to be receiving treatment for his asthma from BOP, and there is no indication that his asthma is uncontrolled.

The CDC also advises that hypertension only "possibly" makes a person more likely to get very sick from COVID-19.[5] Thus, the causal connection between hypertension and serious illness from COVID-19 is speculative. Moreover, the defendant has been prescribed medications to manage his hypertension, and there is

---

[1] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 16, 2023).

[2] *Supra* note 1. Assuming that the defendant's height has remained the same since he was arrested, his BMI can be calculated using his height from the PSR, ECF No. 92, and his weight from his medical records, ECF No. 100 at 9, using simple online tools available from, e.g., the National Institutes of Health. *See* NIH, *Calculate Your Body Mass Index*, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited June 16, 2023).

[3] *Supra* note 1.
[4] *Supra* note 1.
[5] *Supra* note 1.

9

no evidence in the record that his hypertension is uncontrolled. ECF No. 100 (SEALED) at 23–24. To the contrary, on the most recent day in the record that his blood pressure was measured, three out of the four times that measurements were taken, his blood pressure was below the range that the CDC recognizes as "hypertension" and even below the range that the CDC recognizes as "elevated."[6] *Id.* at 45. Although each case must be assessed on its own merits, the Court observes that other courts have rejected motions for compassionate release that assert an increased risk of serious illness from COVID-19 based on high blood pressure. *See United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022); *United States v. Shimek*, No. 4:20-cr-54, 2023 WL 2479609 (E.D. Va. Mar 13, 2023).

Although the parties focus their arguments primarily on the defendant's obesity, asthma, and hypertension, the Court has considered whether other aspects of the defendant's health could bear on its analysis. The Court recognizes that the defendant is 43 years old, which does not place him into the category of increased risk that is recognized by the CDC.[7] The Court also notes that the record is silent on the defendant's vaccination status. But as this Court has observed previously, "the availability of vaccines has . . . generally decreased the likelihood that a defendant will be able to demonstrate 'extraordinary and compelling reasons' that justify

---

[6] CDC, *Facts About Hypertension,* https://www.cdc.gov/bloodpressure/facts.htm (last visited June 16, 2023).
[7] CDC, *COVID-19 Risks and Information for Older Adults*, https://www.cdc.gov/aging/covid19/index.html (last visited June 16, 2023).

released based on the risk of serious illness from COVID-19." *United States v. Smith*, No. 2:19-cr-127, 2023 WL 3901797, at *4 (E.D. Va. June 8, 2023).

The Sentencing Commission's guidance counsels against issuing relief on these grounds. The defendant is not "suffering from a terminal illness;" he does not have a "serious physical or medical condition" that "substantially diminishes" his ability "to provide self-care;" he does not have a "serious functional or cognitive impairment;" and his "physical or mental health" is not "deteriorating . . . because of the aging process." U.S.S.G. § 1B1.13 cmt. n. 1 at (A)(i). Nor is the defendant "at least 65 years old" or "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* at (A)(ii). These factors, though not dispositive, counsel against issuing relief.

Given that the government has conceded that "the defendant's obesity presents an 'extraordinary and compelling' reason for compassionate release," ECF No. 99 at 20, the Court assumes without deciding that defendant has established a particularized susceptibility to serious illness. Nonetheless, the defendant has not demonstrated that he has a particularized risk of contracting COVID-19 at his facility. The defendant is currently housed as USP Big Sandy.[8] As of June 16, 2023,

---

[8] At the time the parties filed their briefs, the defendant was apparently housed at FCI Gilmer. *See* ECF No. 91 at 1; ECF No. 99 at 20. But now, according to the BOP database online, he is housed at USP Big Sandy. *See* BOP, *Find an Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited June 16, 2023). The Court's analysis if the defendant were still housed at FCI Gilmer would be the same, given that as of June 16, 2023, it is reporting only one case of COVID-19 among staff, one case among inmates, and high prevalence of vaccinations among inmates and staff. BOP, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited June 16, 2023).

11

the facility is operating at Level 1 Operations, meaning that the "[m]edical isolation rate" is less than 2 percent and that there have been fewer than 100 positive cases per 100,000 inmates over the last seven days.[9] There are currently no reported cases of COVID-19 among inmates or staff.[10] Moreover, 206 staff and 1013 inmates have been vaccinated against COVID-19.[11] These facts demonstrate that the defendant does not have a particularized risk of contracting COVID-19 at his facility.

Considering the defendant's medical conditions together with his lack of particularized risk of contracting COVID-19, the Court finds that the defendant has not demonstrated an extraordinary and compelling reason that warrants issuing relief.

### b. Career-Offender Designation and Amendment 782

The defendant argues that he was improperly designated as a career offender at sentencing, which resulted in an increased offense level and a higher guidelines range. In addition, the defendant argues that an amendment to the Sentencing Guidelines made subsequent to his sentencing reduces his offense level and, accordingly, the applicable guidelines range. For the following reasons, the Court agrees with the defendant that these two facts, taken together, constitute an extraordinary and compelling reason to modify the defendant's sentence.

---

[9] *See* BOP, *USP Big Sandy* https://www.bop.gov/locations/institutions/bsy/ (last visited June 16, 2023); BOP, *COVID-19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited June 16, 2023).
[10] BOP, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited June 16, 2023).
[11] *Supra* note 10.

Section 4B1.1 of the Sentencing Guidelines provides that a defendant may be designated as a "career offender" if three conditions are met: (1) the defendant was 18 years old at the time of the offense, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions that were either a crime of violence or a controlled substance offense. Designation as a career offender can result in an increased offense level and enhanced guidelines range. *See* U.S.S.G. § 4B1.1(b) and (c).

At the time of his sentencing, the defendant was designated as a career offender based on the fact that he was (1) at least eighteen years old at the time of the instant offense; (2) the offense of conviction was Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846, 841(a)(1) and (b)(1)(B); and (3) the defendant had one prior conviction for Possession of a Weapon of Mass Destruction and one conviction for Possession With Intent to Manufacture/Sell/Distribute Schedule II Controlled Substance. ECF No. 92 ¶ 81.

With the career offender designation, the defendant's offense level was 34, which resulted in a guidelines range of 262 to 327 months. ECF No. 37 at 55. Without the career offender designation, the defendant's offense level would have been 32, and his guidelines range would have been 210 to 262 months. *Id.* But if the defendant were sentenced today, he would not be designated a career offender. As the Fourth Circuit held in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), "a 'conspiracy' conviction under § 846 is a categorical mismatch to the generic crime of conspiracy

enumerated in § 4B1.2(b)." *Id.* at 239. As a result, the Court held that a defendant's prior conviction for conspiracy to possess with intent to distribute cocaine under § 846 could not be a "controlled substance offense" as defined in § 4B1.2(b). *Id.* That holding applies to the defendant because the provision of the Sentencing Guidelines that provides for the career offender enhancement, § 4B1.1., requires that the "instant offense" be "either a crime of violence *or a controlled substance offense.*" U.S.S.G. § 4B1.1(a) (emphasis added).

The government does not appear to dispute that, if the defendant were sentenced today, in light of *Norman*, he would not be designated a career offender. *See* ECF No. 99 at 33–35. Instead, the government argues that (1) "the Fourth Circuit's decision in *Norman* is not retroactive," *id.* at 29, (2) the defendant's motion is "in substance, a second or successive motion under 28 U.S.C. § 2255," *id.* at 30, and (3) the defendant's sentence (and "potential disparity" in sentence compared to other defendants) does not constitute an extraordinary and compelling reason, *id.*

The Court rejects the government's first two arguments. In *United States v. Spencer*, 521 F. Supp. 3d 606, 609 (E.D. Va. 2021), *aff'd*, 853 F. App'x 833 (4th Cir. 2021), the Honorable Rebecca Beach Smith confronted both of these arguments and held that a defendant may raise a *Norman* claim in a motion for compassionate release. Judge Smith reasoned that, in light of the Fourth Circuit's decision in *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), "improper application of the career offender guidelines is not a fundamental defect cognizable in a § 2255 proceeding." *Id.* at 610 (quotation marks omitted). And because the Fourth Circuit explained in

*McCoy* that motions for compassionate release are intended "to capture the truly exceptional cases that fall within no other statutory category," 981 F.3d at 287, a *Norman* claim is cognizable on a motion for compassionate release. The Court agrees with Judge Smith's well-reasoned analysis of this issue in *Spencer*, and with that of the other judges in this district who have come to the same conclusion. *See, e.g.*, *United States v. Hill*, No. 3:14-cr-114, 2023 WL 35211 (E.D. Va. Jan. 4, 2023) (Lauck, J.); *United States v. Williams*, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (Ellis, J.); *United States v. Morris*, 602 F. Supp. 3d 881 (E.D. Va. 2022) (Davis, C.J.).

The government's third argument requires additional analysis. The defendant received a sentence of 240 months, which was below the original enhanced range of 262 to 327 months. Given the significant drug weight attributed to the defendant, the *un*enhanced guidelines range is still quite high—210 to 262 months—meaning that the defendant's sentence is still within the unenhanced guidelines range. Courts in this district have generally found "extraordinary and compelling reasons" to grant *Norman* claims only where there is a significant gap between the sentence actually imposed and the top end of the unenhanced guidelines range. *See, e.g.*, *Hill*, 2023 WL 35211 at *8 (finding extraordinary and compelling reasons where the defendant was sentenced to 188 months and the unenhanced guidelines range was 84 to 105 months); *Williams*, 2021 WL 5827327 at *6 (finding extraordinary and compelling reasons where the defendant was sentenced to 168 months and the unenhanced guidelines range was 100 to 125 months); *Morris*, 602 F. Supp. 3d at 883–85 (finding

extraordinary and compelling reasons where the defendant was sentenced to 294 months and the unenhanced guidelines range was 210 to 262 months).

On these facts, given that the defendant's sentence is still within the unenhanced guidelines range, the *Norman* argument alone does not present an extraordinary and compelling reason to reduce the defendant's sentence. But the defendant offers an additional reason to adjust his sentence: Amendment 782. When it became effective on November 1, 2014, Amendment 782 revised the guidelines applicable to drug trafficking offenses by lowering base offense levels. Combining the amendment with *Norman* changes the defendant's base offense level to 30.[12] U.S.S.G. § 2D1.1(c)(5). The defendant's conduct also warranted a three-level enhancement for his role in the offense, ECF No. 37 at 48, and a three-level reduction for acceptance

---

[12] According to § 1B1.10(b)(1), a court can only modify a defendant's sentence based on an amendment to the guidelines where the "amendment has the effect of lowering a defendant's advisory Guidelines range." U.S.S.G. § 1B1.10(b)(1). The defendant observes that "[the defendant's] incorrect career offender designation meant that the change to the drug quantity table under Amendment 782 did not have the effect of lowering his guidelines range because a court reviewing a motion for retroactive application of Amendment 782 would be required to leave 'unaffected' the incorrect career-offender designation." ECF No. 91 at 10. This issue does not prevent the Court from retroactively applying Amendment 782 to the defendant's case because the Sentencing Commission's guidance contained in § 1B1.10(b)(1) applies only to motions brought under 18 U.S.C. § 3582(c)(2), and the defendant's motion is brought pursuant to 18 U.S.C. § 3582(c)(1)(A). Thus, the Court may permissibly find that the disparity between the imposed sentence and the revised guidelines range (which takes into account both *Norman* and Amendment 782) constitutes an "extraordinary and compelling reason" to reduce the defendant's sentence. *See, e.g.*, *United States v. Gilmer*, No. 5:00-cr-30053, 2022 WL 1423615, at *3 (W.D. Va. May 5, 2022) (applying both *Norman* and Amendment 782 to find that "the significant disparity between Gilmer's current sentence and the sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)").

of responsibility, *id.* at 55. Therefore, his revised offense level is 30, and the applicable guidelines range is 168 to 210 months.

When Amendment 782 is taken into account, the sentence imposed on the defendant is 30 months above the revised range, and the bottom end of the original range is 94 months, or nearly eight years, above the bottom of the revised range. This disparity is similar to those in other cases from this district where judges have found "extraordinary and compelling reasons" to modify a sentence. *See, e.g.*, *Hill*, 2023 WL 35211 at *8 (finding extraordinary and compelling reasons where the difference between the bottom end of the original range and the revised range was 104 months); *Morris*, 602 F. Supp. 3d at 885 (finding extraordinary and compelling reasons to adjust a sentence because, in part, the difference between the bottom end of the original range and the revised range was "more than 12 years"). On these facts, the Court finds that the disparity between the term of incarceration imposed when the defendant was sentenced and the term that would be imposed today is an "extraordinary and compelling" reason that warrants a sentence reduction.

    *ii.*    **Sentencing Factors**

Having found that extraordinary and compelling reasons exist to modify the defendant's sentence based on his designation as a career offender and subsequent modifications to the Sentencing Guidelines,[13] the Court must now consider the factors

---

[13] The Court notes that its weighing of the § 3553(a) factors would be different if it had found extraordinary and compelling reasons to issue relief based on COVID-19, given that the defendant has requested a reduction to time already served on those grounds (as opposed to the more moderate sentence reduction he requested on the

17

enumerated in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). If, after doing so, the Court finds that relief is still warranted, it must then determine the extent to which the defendant's sentence should be reduced.

The "nature and circumstances of the offense" are serious. The defendant pleaded guilty to Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine. Over a kilogram of methamphetamine was attributed to the defendant. ECF No. 37 at 48. Given the "seriousness of the offense," the sentence imposed must be sufficient to "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). However, the Court recognizes that the instant offense did not involve the use of firearms or acts of violence. *See* ECF No. 37 ¶¶ 11–19.

As for the "history and characteristics of the defendant," the Court is particularly influenced by the defendant's extensive criminal history. The defendant has been found guilty of, *inter alia*, two counts of receiving stolen goods (ECF No. 37 at 14 and 17–18), one count of possessing a weapon of mass destruction (a shotgun with a shortened barrel) (*id.* at 15–16), two counts of felon in possession of a firearm (*id.* at 19–20 and 23), possession with intent to manufacture/sell/distribute a controlled substance (methamphetamine) (*id.* at 21), possession with intent to sell/distribute methamphetamine (*id.* at 27), two counts of resisting a public officer,

---

career offender designation grounds). *See* ECF No. 91 at 2. Even if the Court had found that such reasons exist based on COVID-19, after considering the factors as discussed below, the Court finds that immediate release is not warranted given the defendant's criminal history and the seriousness of the offense.

(*id.* at 13 and 27), and seventeen counts of driving with a revoked license (*id.* at 10–28).

The Court recognizes that the defendant has had an extraordinarily challenging life. As Judge Morgan remarked at the defendant's original sentencing, "the defendant certainly had one of the more difficult childhoods that the Court has encountered." ECF No. 59 at 13:12–14. The defendant's mother left his home when he was eleven years old and never returned. ECF No. 37 ¶ 82. The defendant's father was physically abusive and exposed the defendant and his brother to drugs at a young age—the defendant first smoked marijuana with his father when he was eleven years old. *Id.* ¶ 83. The defendant's house was frequently without power or water. *Id.*

The Court has also considered the "kinds of sentences available" and the applicable sentencing range. The defendant is currently serving a sentence of 240 months, which is twice the length of the statutory minimum and 30 months above the adjusted guidelines range. ECF No. 37 at 43.

In light of the factors enumerated in § 3553(a), the Court finds that a sentence reduction is warranted. Given the defendant's extensive criminal history and the serious nature of the instant offense, however, the Court finds that the defendant's sentence should be reduced to the top of the adjusted guidelines range: 210 months. The other terms of the defendant's original sentence, including the eight-year period of supervised release, remain unchanged.

## III. CONCLUSION

For the reasons stated above, the defendant's Motion for Compassionate Release (ECF No. 91) is **GRANTED IN PART** and **DENIED IN PART**. The defendant's term of imprisonment is **REDUCED** to 210 months. All other provisions of the July 9, 2014 judgment remain in effect. *See* ECF No. 41.

The Clerk is **DIRECTED** to forward copies of this Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ *JKW*

Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 16, 2023